The Honorable Thomas S. Zilly

1
2
3
4
5
6
7      UNITED STATES DISTRICT COURT FOR THE
8          WESTERN DISTRICT OF WASHINGTON
                      AT SEATTLE
9

10    UNITED STATES OF AMERICA,               NO. CR13-165TSZ

11                          Plaintiff
                                             **REPONSE TO DEFENDANT'S**
12                                           **MOTIONS *IN LIMINE***

13                    v.

14    JOHN CHRISTIAN PARKS,

15                          Defendant.

16

17         On October 3, 2013, defendant JOHN PARKS filed his Motions *in Limine* seeking

18    exclusion at trial of four categories of evidence.  Dkt. 82.  The United States responds to

19    these motions as follows:

20                      **I.      OVERVIEW**

21         Defendant JOHN PARKS is charged with one count of Felon in Possession of

22    Firearms—Armed Career Criminal in violation of Title 18, United States Code, Section

23    922(g)(1).  Defendant has eight prior felony convictions.   Seven involve the

24    manufacture, distribution or possession of controlled substances; one is a conviction for

25    Escape in the Second Degree.

26         The present charge arises out of a March 30, 2013 encounter between JOHN

27    PARKS and Forest Service law enforcement officers who were patrolling the Mt. Baker-

28    Snoqualmie National Forest.  The officers first encountered a civilian driving an all-

RESPONSE TO MOTIONS IN LIMINE
US v. PARKS, CR13-165TSZ- 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  terrain vehicle ("ATV"), who advised the officers that he had seen a group of men

2  shooting guns in the forest.  The ATV driver told officers that one of individuals was

3  holding a long gun and wearing a green military-style "boonie" hat.

4      Officers responded to the location described by the ATV driver, where they came

5  upon JOHN PARKS, several companions, and two trucks.  JOHN PARKS was wearing a

6  hat matching the description provided by the ATV rider.  A consensual search of the two

7  trucks retrieved eight firearms, including four assault rifles and two semiautomatic

8  pistols, along with a large amount of ammunition.  One of the two trucks—a GMC

9  Yukon—is registered to JOHN PARKS's girlfriend.  Officers found a GMC key in JOHN

10 PARKS's pocket at the time of the arrest.

11     On May 29, 2013, the grand jury issued a five-count Indictment charging JOHN

12 PARKS and two co-defendants with Felon in Possession of Firearm charges.  Both co-

13 defendants have entered guilty pleas, leaving for trial a single charge of Felon in

14 Possession against JOHN PARKS.

15     At trial, the defense position is expected to be that he never possessed any of the

16 firearms in the trucks.  While the officers did not actually witness JOHN PARKS holding

17 a firearm, the government will offer evidence showing that that the defendant did possess

18 firearms.  Some of the most significant evidence concerns JOHN PARKS's purchases of

19 two of the charged firearms.  In particular, one of the firearms (a Smith & Wesson 308)

20 was purchased from a Virginia resident over the internet.  The government will offer

21 email communications between the Virginia resident (seller) and the gun purchaser, and

22 will offer evidence (discussed more fully below) establishing that JOHN PARKS sent the

23 emails arranging the purchase.   The government will also offer testimony from a

24 Washington resident who sold another of the charged firearms to JOHN PARKS.

25 ///

26 ///

27

28

RESPONSE TO MOTIONS IN LIMINE
US v. PARKS, CR13-165TSZ- 2

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

## II.     RESPONSE TO *MOTIONS IN LIMINE*

**A.     Defendant's Prior Convictions**

### 1.     Government Position

Defendant moves to preclude admission of all of JOHN PARKS's felony convictions.  The government opposes this motion with respect to the three convictions that are less than ten years old.  These convictions are admissible under Rule 609(a)(1)(B) as impeachment evidence if defendant testifies.  If defendant does not testify, the government does not intend to offer evidence of defendant's convictions provided that defendant stipulates that he has been convicted of a felony.

### 2.     Relevant Background

As discussed above, defendant has eight prior felony convictions.  Five of the convictions are more than ten years old.  The three remaining convictions include:  (1) Violation of the Uniform Controlled Substances Act ("VUCSA")—Manufacture, Delivery and Possession with Intent (2005); (2) Escape in the Second Degree (2004); and (3) VUCSA—Possession (2004).  As explained below, Ninth Circuit law makes clear that all three convictions are admissible under Rule 601(a) if defendant testifies.

### 3.     Discussion

Federal Rule of Evidence 609 provides that evidence of felony convictions less than ten years old "*must* be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs the prejudicial effect of that evidence."  Fed. R. Evid. 609(a)(1)(B) (emphasis added).   This rule "is premised on the common sense proposition that one who has transgressed society's norms by committing a felony is less likely than most to be deterred from lying under oath." *Walden v. Georgia Pacific Corp.*, 126 F.3d 506, 523 (3d Cir. 1997); *see United States v. Lipscomb*, 702 F.2d 1049, 1061 (D.C. Cir. 1983) ("[a]ll felony [convictions] have some probative value on the issue of credibility").

Because the three convictions at issue are less than ten years old, they must be admitted if their probative value outweighs their prejudicial effect.  A trial court is to

1  consider the following five factors in balancing probative value against prejudicial effect:
2  (1) the impeachment value of the prior crime; (2) the point in time of the conviction and
3  the defendant's subsequent history; (3) the similarity between the past crime and the
4  charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of
5  the defendant's credibility.  *United States v. Alexander*, 48 F.3d 1477, 1488 (9th Cir.
6  1995).  All five factors weigh in favor of admitting the felony convictions:

7       ***Impeachment Value:***  The impeachment value of JOHN PARKS's convictions is
8  substantial.  With respect to the drug convictions, the Ninth Circuit has specifically held
9  that convictions for drug offenses are probative of a witness's credibility and therefore
10 may be admitted against a defendant who takes the stand.  *United States v. Cordoba*, 104
11 F.2d 225, 229 (9th Cir. 1997) (cocaine trafficking conviction properly admitted as
12 impeachment evidence; "[p]rior convictions for drug offenses are probative of veracity");
13 *see also United State v. Harris*, 959 F.2d 242, 1992 WL 72868, *2 (9th Cir. 1992)
14 (unpublished) (cocaine possession conviction properly admitted as impeachment
15 evidence; "the prior conviction, although similar to the charged offense, was admissible
16 to impeach Harris's testimony and credibility. The government had a right to present
17 evidence which impeached Harris's trustworthiness as a witness.").

18      Similarly, defendant's Escape conviction goes directly to his credibility.  As
19 discussed above, felony convictions are probative of veracity because a person inclined to
20 "transgress society's norms" by committing a felony may be more inclined to lie under
21 oath.  *Walden*, 526 F.3d at 123.  The crime of Escape, by its nature, is a willful violation
22 of a court judgment imposing sentence, and therefore reflects a disregard for the rules of
23 the justice system.   In this case, JOHN PARKS's Escape conviction is probative because
24 it demonstrates a willingness defy court authority.  It is reasonable to infer from this that
25 he is less concerned with committing perjury than other witnesses might be.

26      ***The Point in Time of the Conviction:***  All three of JOHN PARKS's convictions
27 are within the last ten years.  Moreover, the continuing nature of defendant's criminal
28

RESPONSE TO MOTIONS IN LIMINE
US v. PARKS, CR13-165TSZ- 4

1   career (eight felonies over eight years) weighs in favor of admitting his three most recent

2   convictions.

3         ***Similarity of the Past Crimes to the Charged Crime:***  None of defendant's

4   convictions involve firearms or are otherwise similar to the present charge of Felon in

5   Possession of a Firearm.  This minimizes the risk that evidence of the previous crimes

6   will unfairly cause the jury to assume defendant committed the charged crime.  This risk

7   can also be addressed through a limiting instruction that the jury should consider the

8   convictions only for their impact on his credibility.  Therefore, this factor also weighs in

9   favor of admitting the convictions.

10        ***Importance of the Defendant's Testimony and Centrality of His Credibility****:*

11   Defendant's expected testimony would go right to the heart of the case.  JOHN PARKS is

12   expected to testify that the firearms belonged to others and that he did not possess them.

13   If the jury were to credit this testimony, it would be dispositive of the charges.  The

14   defendant's credibility therefore could not be more central to the case.  This factor

15   weighs very heavily in favor of admitting the convictions.

16         Because all five factors weigh in favor of admitting the defendant's three most

17   recent convictions, defendant's motion should be denied, and evidence of the three most

18   recent convictions should be admitted.

19   **B.**    **Evidence Concerning Racial or Religious Views of Defendant**

20        **1.**     **Background**

21         Defendant moves to exclude all evidence of his racial (white supremacist) and

22   religious views.  The government opposes this motion as overbroad.  The government

23   will not put defendant's racist or religious views on trial, and it does not intend to offer

24   any evidence for the purpose of demonstrating defendant's racist or religious viewpoints.

25   Indeed, the government does not intend to offer any of the specific evidence attached to

26   defendant's Motion.  *See* Dkt. 82-1p. 6-9 (photos of supremacist material seized at

27   defendant's house).

28

RESPONSE TO MOTIONS IN LIMINE
US v. PARKS, CR13-165TSZ- 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    The government *does*, however, intend to approximately seven critical emails that

2    contain oblique references defendant's religious views.  In particular, emails defendant

3    sent arranging the purchase of one of the charged firearms contain some religious rhetoric

4    that establishes defendant sent the emails.  The Court should admit these emails, and

5    should consider the admission of any other evidence containing racist or religious

6    material on a case-by-case basis.  The government will not offer any such evidence

7    without seeking the prior approval of the Court outside the presence of the jury.

8            **2.    Background**

9            There are two main sources of evidence reflecting JOHN PARKS's racist and

10   religious views:

11           ***Email Evidence:***  The first and more important source of evidence consists of

12   emails written by JOHN PARKS.  As discussed above, one of the charged firearms (the

13   Smith & Wesson 308) was purchased from a Virginia resident over the internet.  The

14   purchaser arranged the purchase through an online gun broker using the username

15   "Yah83H."  Furthermore, the purchaser also communicated with the seller using the

16   email address meyer.steve41@yahoo.com, but signing the emails "James."  The final

17   email with the purchaser states as follows:   "Received rifle today . . . Yaweh Bless

18   you . . . May Yaweh protect you."  *See* Ex A.  Yaweh is a Hebrew deity who is also

19   worshipped by some modern-day white supremacists.

20           A key issue at trial will be whether JOHN PARKS sent the

21   "meyer.steve41@yahoo.com" emails.  The government will prove he did so in three

22   ways.  First, the agents who searched JOHN PARKS's house found a notebook

23   containing the Virginia resident's name and email address.  Second, JOHN PARKS sent

24   two emails from his FDC email account directing his girlfriend to access the

25   meyer.steve41@yahoo.com account.  Ex. B.  In one of the emails, JOHN PARKS refers

26   to the meyer.steve41@yahoo.com as "my" account and provides her with the account

27   password.  *Id.*  Third, and importantly for purposes of this Response, the government

28   expects to offer six additional emails JOHN PARKS sent from his FDC account that

1   contain language similar or identical to the "Yaweh" blessings contained in the email the

2   gun purchaser sent to the gun seller. Ex C at 1-6 (closing with the blessings "Yaweh

3   Bless" and "Yaweh Protect").  These emails also contain repeated references to the

4   number 83, which is believed to be a reference to Psalms '83.  *Id.*  In one additional

5   email, defendant discloses that he has an email account with the user name "freeci83"

6   and the password "hailyaweh."  *Id.* at 7.   All of these email references to "Yaweh" and

7   the number '83 are probative of defendant's link to the key email account

8   (meyer.steve41@yahoo.com ), which used the same language as defendant, and to the

9   "Yah83H" gunbroker user account used to purchase the charged Smith & Wesson 308.[1]

10       ***Other Supremacist Papers and Material:***  The second category of supremacist

11   material (and the only one discussed in defendant's motion) includes patches, symbols,

12   and papers found during the search of JOHN PARKS's house.  The government does not

13   intend to offer any of this evidence in its case in chief, but believes it would be premature

14   for the court to issue an order excluding these materials wholesale at this time.   If this

15   material becomes relevant as the trial progresses, the government will seek a ruling from

16   the Court before offering the evidence.

17       **3.    Discussion**

18       The government acknowledges that most evidence of defendant's white

19   supremacist views is likely inadmissible under Rule 403 because the risk of unfair

20   prejudice substantially outweighs the evidence's probative value.  However, in the case

21   of the emails discussed above, the probative value is particularly high and the prejudicial

22   effect particularly low.  Under these circumstances, the material is admissible.  *United*

23   *States v. Allen,* 341 F.3d 870, 888 (9th Cir. 2003) (although prejudicial, evidence of white

24   supremacist views was admissible where probative of defendant's racial animus); see

25   also *United States v. Jernigan*, 341 F.3d 1273, 1294 (11th Cir. 2003) (although

26

27   ─────────────────────

28   [1] The government may offer additional emails sent by defendant that do not contain racists or religious rhetoric.

RESPONSE TO MOTIONS IN LIMINE
US v. PARKS, CR13-165TSZ- 7

1  prejudicial, evidence of gang affiliation admissible to link defendant to gun where gun
2  was wrapped in a red bandanna).

3      With respect to probative value, proof that JOHN PARKS wrote the
4  "meyer.steve41@yahoo emails establishes defendant's possession of the firearms (the
5  key issue in the case) and defeats the defense theory that the guns belonged to someone
6  else.  For this reason, the emails (including their references to "Yaweh" and "83") are
7  potentially the most probative evidence (the "smoking gun") in this case.

8      On the other side of the balance, the prejudicial value of the emails is diminished
9  by the fact that the name "Yaweh" and the number 83 are very obscure references to
10 white supremacy that the jury is unlikely to appreciate.  The government does not intend
11 to tie these terms to supremacist beliefs, but simply to point out the similarity in language
12 between defendant's emails and the gun purchaser's email.  Furthermore, to the extent
13 defendant or the Court is concerned that the jury might make this connection on its own,
14 a limiting instruction would limit any potential for unfair prejudice.

15     For the foregoing reasons, the Court should deny defendant's motion and allow
16 the government to present the email evidence discussed above and attached as Exhibits
17 A-C.  The government plans to redact the emails to remove any racist or offensive
18 language other than the word "Yaweh" and the number 83.  The government will not
19 elicit any additional evidence of defendant's racist or religious views without prior notice
20 to the Court and defendant outside the presence of the jury.

21 **C.    In-Court Identification of the Defendant**

22      **1.    Government Position**

23     Defendant moves to preclude any in-court identification of defendant by the ATV
24 rider that saw JOHN PARKS holding a gun.  The government opposes this motion
25 because such testimony is relevant to the question of whether defendant possessed a
26 firearm, and there is no basis on which to exclude it.

27 ///
28 ///

### 2.      Background

As discussed above, law enforcement officers contacted defendant after an ATV rider advised the officers that he had just seen a man in a green "boonie" hat holding a firearm.  When the officers contacted JOHN PARKS, defendant was wearing a hat matching the one described by the ATV rider.  However, when the officers later asked the ATV rider to identify the defendant in a photo lineup containing defendant's photo, the ATV rider was unable to do so, and instead stated the he did *not* see defendant's photo in the lineup.

### 3.      Discussion

While defendant does not explain the rationale for his motion, presumably the argument is that the witness should not be able to perform an in-court identification because he could not identify the defendant in a photo lineup.  Defendant cites no authority for his position.

Under Rules 401 and 402, evidence is admissible if it "has any tendency to make [any fact of consequence] more or less probable than it would be without the evidence" unless some specific rule, statute, or constitutional provision states otherwise.  Fed. R. Evid. 401.  Here, eyewitness testimony that the witness saw the defendant holding a firearm is obviously relevant to the question of whether defendant possessed a firearm. Defendant does not identify any rule that would preclude the evidence, and there are many possible reasons (such as the fact the defendant was wearing sunglasses in the forest) why the witness might not have been able to identify the defendant in the lineup.

While defendant may be entitled to cross examine the witness about his inability to identify the defendant in a photo lineup, this is not a reason to exclude the in-court identification altogether.  If the witness identifies the defendant, the jury should be left to make its own determination as to whether the in-court identification is reliable.

///

///

RESPONSE TO MOTIONS IN LIMINE
US v. PARKS, CR13-165TSZ- 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**D.    Evidence of Methamphetamine Manufacture and Possession**

    **1.    Government Position**

    Defendant moves to exclude all evidence regarding the manufacture or possession of methamphetamine by defendant.  The government opposes the motion only insofar as it would prevent officers from describing JOHN PARKS's behavior at the scene of the alleged crime, and the false statement he made to officers that time.

    **2.    Background**

    At the time of the arrest, both law enforcement officers saw JOHN PARKS make a "quick furtive" movement, and simultaneously heard a "clinking" sound of an object hitting the ground.  Dkt. 82-1 at 2-3.  One of the officers then discovered a small glass pipe in the area immediately adjacent to JOHN PARKS.  *Id.*  JOHN PARKS then made a statement denying that he had attempted to discard the pipe.  *Id.*   The government does not intend to offer evidence that the pipe is of the sort used to smoke methamphetamine, nor does it intend to offer any other evidence (other than the convictions discussed above) of defendant's drug use or trafficking.

    **3.    Discussion**

    The law enforcement witnesses should be permitted to testify about JOHN PARKS's attempt to conceal the pipe, as well as his false statement to law enforcement about the pipe.  As an initial matter, the incident is part of the very law enforcement encounter that is the basis of the charge.  The officers should be permitted to provide a complete narrative about that encounter.

    Moreover, the pipe incident is probative of JOHN PARKS's state of mind and intent at the time of the arrest.  The fact that defendant tried to deceive the officers—both by hiding the pipe and by lying about it—shows defendant's knowledge that he was engaged in criminal activity.  Therefore, the evidence is relevant and admissible under Rules 401 and 402.  In the alternative, the evidence is admissible under Rule 404(b) as an act relevant to prove defendant's state of mind during the law enforcement contact.

RESPONSE TO MOTIONS IN LIMINE
US v. PARKS, CR13-165TSZ- 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Furthermore, if this evidence is not admitted as part of the government's case in chief, it is admissible impeachment evidence under Rule 608(b) if defendant testifies. Rule 608(b)(1) provides that specific incidents of conduct "may be inquired into" on cross examination if they are probative of the [witness's] character for truthfulness or untruthfulness."   Here, evidence that defendant tried to deceive law enforcement officers is probative of his character for truthfulness.

Finally, evidence of the pipe incident should not be excluded under Rule 403. Rule 403 provides for exclusion of evidence only where the probative value of the evidence is "substantially outweighed" by a danger of, *inter alia*, unfair prejudice.  As discussed above, the probative value of the evidence is high.  Any risk of unfair prejudice is addressed by the fact that the government would not offer evidence that the pipe is of the sort used for illegal drugs.

### III.    CONCLUSION

For foregoing reasons, defendant's *Motions in Limine* should be denied.

DATED:  October 10, 2013.

Respectfully submitted,

JENNY A. DURKAN
United States Attorney

*s/ Seth Wilkinson*
SETH WILKINSON
Special Assistant United States Attorney

*s/ Stephen Hobbs*
STEPHEN HOBBS
Special Assistant United States Attorney

United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Telephone: (206) 553-7970
Email: Stephen.Hobbs@usdoj.gov
Email: Seth.Wilkinson@usdoj.gov

RESPONSE TO MOTIONS IN LIMINE
US v. PARKS, CR13-165TSZ- 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that on October 10, 2013, I electronically filed the foregoing with

3   the Clerk of the Court using the CM/ECF system which will send notification of such

4   filing to the attorney(s) of record for the defendant(s).

5

6                                    *s/Rebekah Smith*
                                     REBEKAH SMITH
7                                    Legal Assistant
                                     United States Attorney's Office
8                                    700 Stewart Street, Suite 5220
9                                    Seattle, Washington 98101-1271
                                     Phone: 206-553-7970
10                                   E-mail: rebekah.smith@usdoj.gov

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RESPONSE TO MOTIONS IN LIMINE
US v. PARKS, CR13-165TSZ- 12