The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff <br><br> v. <br><br> JOHN CHRISTIAN PARKS, <br><br> Defendant. | NO. CR13-165TSZ <br><br> **REPONSE TO DEFENDANT'S MOTION TO SUPRESS IDENTIFICATION EVIDENCE** |

On October 10, 2013, defendant JOHN PARKS filed a Motion to Suppress Identification Evidence by Witness Charles Junker. Dkt. 94. The United States respectfully request that the motion to suppress be denied.

## I.     INTRODUCTION

Defendant moves to suppress identification evidence based on criticism of agents' identification procedures. However, controlling law makes clear that such complaints are properly evaluated by the jury at trial, and are not a basis on which to exclude evidence except in extreme circumstances not present here. The Supreme Court and Ninth Circuit have both held identifications admissible where, as here, the witness accurately describes the defendant and is then presented with a single photograph (or single-subject "showup") for identification. Defendant's complaints about this procedure go to weight of this evidence, not its admissibility, and should be evaluated by the jury at trial.

RESPONSE TO MOTION TO SUPPRESS
US v. PARKS, CR13-165TSZ- 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## II.   BACKGROUND

Defendant JOHN PARKS is charged in Count 2 of the Indictment with Felon in Possession of a Firearm. The Indictment charges that defendant possessed eight different firearms on or about March 30, 2013. One of these firearms is a Smith & Wesson M&P 15 NATO assault rifle (the "M&P 15"), which was found on March 30 with defendant's other possessions in the back of his girlfriend's truck when law enforcement contacted him in the Mt. Baker-Snoqualmie National Forest.

Firearms Transactions Records establish that the M&P 15 was originally purchased by Charles Junker, a resident of Belfair, Washington. *See* Exhibit A (Memo of Junker Interview). Mr. Junker bought the assault rifle at a Tacoma gun shop on December 21, 2012. Mr. Junker soon decided to sell the gun and, on January 16, 2013, advertised it for sale on Craig's List.

Mr. Junker received a call from a prospective buyer almost immediately after posting the advertisement on line. Phone records show that this call came from a phone registered to Tamara Hoots, JOHN PARKS's live-in girlfriend. Mr. Junker agreed to meet the buyer at a Belfair Chevron station that is close the Junker residence and less than 10 miles from JOHN PARKS's house. Mr. Junker will testify that he did meet the buyer at the Chevron station and exchanged the gun for cash.

Agents from the Bureau of Alcohol, Tobacco and Firearms ("ATF") interviewed Charles Junker on October 2, 2013. Mr. Junker described the firearm purchaser as follows:

> Approximately 5'8." About 180 pounds with long hair (Junker pointed to an area below his own shoulders to demonstrate the length of the male's hair), and wearing an OD green military style jacket…. Junker further described [the purchaser] as "one of those end of the world type guys."

Exhibit A. Mr. Junker also described the purchaser's vehicle as a "dark colored SUV" and stated that the purchaser was accompanied by an "older" and "rough" woman.

Mr. Junker's description matched the defendant. Defendant has long hair and was wearing a green military-style jacket at the time law enforcement contacted him in the

RESPONSE TO MOTION TO SUPPRESS
US v. PARKS, CR13-165TSZ- 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

March 30, 2013 forest incident. According to defendant's state-issued identification, JOHN PARKS is 5'9" tall and weighs 155 pounds. Furthermore, JOHN PARKS's live-in girlfriend, Tamara Hoots, owns a dark GMC Yukon. When law enforcement contacted defendant in the Mount Baker-Snoqualmie National Forest, they found the M&P 15 assault rifle, and another assault rifle, in Hoots's GMC Yukon. Officer also found a GMC key in JOHN PARKS's pocket.

After Mr. Junker provided his description of JOHN PARKS, agents showed Mr. Junker JOHN PARKS's Washington identification photo. Mr. Junker positively identified JOHN PARKS as the buyer of the gun, but correctly stated that his hair is presently longer than it appeared in the photograph. Agents also showed Mr. Junker a photograph of Tamara Hoots. Mr. Junker said that he thought the woman in the picture was the woman who accompanied JOHN PARKS, but that he was not certain. The government intends to call Charles Junker as part of its case-in-chief.

### III.  DISCUSSION

**A.  Identifications are Generally Admissible When the Witness is Shown a Single Subject Photograph or a Single Showup Identification is Conducted.**

Federal Rule of Evidence 801(d)(1)(c) expressly permits the admission of pretrial eyewitness identifications of a defendant. Generally, shortcomings in the identification procedure "g[o] to weight, not to substance" and are an issue "for the jury to weigh." *Manson v. Brathwaite*, 432 U.S. 98, 117 (1977). Significantly, the Ninth Circuit Model Jury Instructions specifically contemplate that it is for the jury to evaluate factors that go to the credibility of the identification, including: the capacity and opportunity of the eyewitness to observe the offender based upon the length of time for observation and the conditions at the time of observation; *whether the identification was the product of the eyewitness's own recollection or was the result of subsequent influence or suggestiveness*; any inconsistent identifications made by the eyewitness; the witness's familiarity with the subject identified; *the strength of earlier and later identifications*; lapses of time between the event and the identification; and the totality of circumstances

RESPONSE TO MOTION TO SUPPRESS
US v. PARKS, CR13-165TSZ- 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

...

surrounding the eyewitness's identification.  See Exhibit B (Ninth Circuit Model Jury Instruction 4.11) (emphases added).

Defendant contends Mr. Junker's identification should be suppressed because the procedure was suggestive.  The fact that an identification procedure is suggestive, without more, does not require exclusion of the identification.  *Neil v. Biggers*, 409 U.S. 188, 198 (1972).  Rather, the evidence should be excluded "only if the photographic identification procedure was so impermissibly suggestive as to give rise to a *very substantial likelihood* of irreparable misidentification."  *Id.* at 197 (quoting *Simmons v. United States*, 390 U.S. 377 (1968) (emphasis added); *see United States v. Kessler,* 692 F.2d 584, 585 (9th Cir. 1982) (while "showup" procedures featuring only the defendant are suggestive of guilt "to a certain degree," they are generally "not objectionable" unless there is a "very substantial likelihood of irreparable misidentification").

In *Neil*, for example, the Supreme Court found admissible a "showup" procedure featuring only the defendant after the witness correctly described the defendant's height, weight and complexion.  *Neil*, 409 U.S. at 198.  Similarly, in *Manson*, the Supreme Court found permissible an identification by a law enforcement witness who was shown a single photograph of the defendant after describing the defendant's height, race, build, complexion and clothing.  *Manson*, 432 U.S. at 101.

**B.     The Procedure Here Did Not Create a "Very Substantial Likelihood of Irreparable Misidentification."**

To determine whether an identification process created a "very substantial likelihood of identification," courts are to consider five factors:  (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation.  *Manson*, 432 U.S. at 114.  Consideration of these factors shows that the Charles Junker's identification of JOHN PARKS is admissible here.

RESPONSE TO MOTION TO SUPPRESS
US v. PARKS, CR13-165TSZ- 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*Opportunity of the Witness to View the Criminal at the Time of the Crime:* Mr. Junker's opportunity to view the defendant was excellent. This is not a case in which the witness saw the defendant in the course of a fast-moving crime, perhaps with an overtone of violence. Nor is it a case in which the witness only had a fleeting, or partial, glimpse of a fleeing suspect. Rather, Mr. Junker engaged in a face-to-face, hand-to-hand transaction with the gun purchaser. Mr. Junker had the opportunity to view not only the purchaser's face, but his clothing, his vehicle and his companion.

*Witness's Degree of Attention:* This factor also weighs heavily in favor of admission. Mr. Junker was fully focused on the gun purchaser because he was directly engaged in a transaction with him. There were no distractions that would have diverted the Mr. Junker's attention from the defendant.

*Accuracy of the Witness's Prior Description:* Charles Junker described the defendant's height, hair length, clothing and vehicle, and also described his companion, Tamara Hoots. All of this was accurate, with the exception that the witness somewhat overestimated defendant's weight. This description was at least as specific as the description that was found sufficient in *Neil*. 409 U.S. at 380 (description included age, height, weight and complexion).

*Level of Certainty Demonstrated by Witness:* Charles Junker exhibited certainty about his identification in two ways. First, while Charles Junker positively identified JOHN PARKS, he stated that he could not be certain that the photograph of the woman was Tamara Hoots, though he thought it was her. This demonstrates that Charles Junker is not disposed to make a positive identification unless he is certain. Second, the witness specifically (and accurately) commented that the gun purchaser's hair was longer than that shown in the picture. The fact that Charles Junker commented on the one feature of the photograph that appeared different from his recollection of the purchaser adds credence to the witness's statement that the remainder of the purchaser's appearance matched the photograph.

RESPONSE TO MOTION TO SUPPRESS
US v. PARKS, CR13-165TSZ- 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    ***Lapse of Time Between Crime and Confrontation:***  Charles Junker met with
2    defendant on January 16, 2013 and identified him on October 2.  While this lapse of time
3    is significant, it is not dispositive given all the other factors in favor of admission.
4    Indeed, in *Neil*, the Supreme Court approved an identification where there was a seven-
5    month lapse between the crime and the confrontation.  *Neil*, 409 U.S. at 383.

6    When all five factors are considered, defendant cannot establish that the
7    identification procedure created a "very substantial likelihood of irreparable
8    misidentification."  *Neil*, 409 U.S. at 198.  Accordingly, any shortcomings in the
9    identification procedure are a matter to be weighed by the jury according to the criteria
10   set out in Model Instruction 4.11.  As discussed above one of those criteria is whether the
11   identification procedure was suggestive.

12   Finally, as noted above, the government plans to call Mr. Junker as a witness in its
13   case-in-chief.  Thus, this is not a situation in which an out-of-court identification will be
14   presented to the jury without an opportunity for the defendant to cross-examine the eye-
15   witness directly about the identification.  Accordingly, the defendant will have a full
16   opportunity to present any concerns it has about the identification procedure to the jury
17   and to question Charles Junker witness concerning the accuracy and reliability of his
18   identification.
19   ///
20   ///
21   ///
22   ///
23   ///
24   ///
25   ///
26   ///
27   ///
28   ///

RESPONSE TO MOTION TO SUPPRESS
US v. PARKS, CR13-165TSZ- 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## IV.   CONCLUSION

For foregoing reasons, the government respectfully requests that the defendant's Motion to Suppress be denied.

DATED:  October 18, 2013.

Respectfully submitted,

JENNY A. DURKAN
United States Attorney

*s/ Seth Wilkinson*
SETH WILKINSON
Special Assistant United States Attorney

*s/ Stephen Hobbs*
STEPHEN HOBBS
Special Assistant United States Attorney

United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Telephone: (206) 553-7970
Email: Stephen.Hobbs@usdoj.gov
Email: Seth.Wilkinson@usdoj.gov

RESPONSE TO MOTION TO SUPPRESS
US v. PARKS, CR13-165TSZ- 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**CERTIFICATE OF SERVICE**

I hereby certify that on October 18, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorney(s) of record for the defendant(s).

*s/Rebekah Smith*
REBEKAH SMITH
Legal Assistant
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-7970
E-mail: rebekah.smith@usdoj.gov

RESPONSE TO MOTION TO SUPPRESS
US v. PARKS, CR13-165TSZ- 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970