The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR13-165TSZ |
| Plaintiff | **GOVERNMENT'S TRIAL BRIEF** |
| v. | |
| JOHN CHRISTIAN PARKS, | |
| Defendant. | |

The United States of America, through Jenny A. Durkan, United States Attorney for the Western District of Washington, and Stephen Hobbs and Seth Wilkinson, Special Assistant United States Attorneys, respectfully submits the following Trial Memorandum.

## I.      INTRODUCTION

Defendant JOHN PARKS, an eight-time convicted felon, is charged with one count of *Felon in Possession of Firearms* in violation Title 18, United States Code, Section 922(g)(1).  The charge arises out of a March 30, 2013, encounter in which Forest Service law enforcement officers found JOHN PARKS and others engaged in target practice using assault rifles, semiautomatic pistols, and other firearms in the Mount Baker-Snoqualmie National Forest.

Trial is scheduled for October 28, 2013.  The United States expects to call between 10 and 15 witnesses, and to offer approximately 50 exhibits during its case-in-chief.  The government's case-in-chief is expected to last approximately three days.

Special Assistant United States Attorneys Stephen Hobbs and Seth Wilkinson will represent the government.  Task Force Officer Ryan Kowalchuk of the Bureau of Alcohol, Tobacco and Firearms ("ATF") will also be present at counsel table.

## II.        THE GOVERNMENT'S CASE-IN-CHIEF

### A.        Background

#### 1.        Defendant's Felony Convictions

Defendant JOHN PARKS is charged with *Felon in Possession of a Firearm* based on eight prior felony convictions.  The convictions are as follows:

1. *Violation of the Uniform Controlled Substances Act ("VUCSA")— Manufacture, Delivery and Possession with Intent*, Pierce County Superior Court, May 17, 2005;

2. *Escape in the Second Degree*, King County Superior Court, December 20, 2004;

3. *VUCSA—Possession*, King County Superior Court, May 21, 2004;

4. *VUCSA—Possession*, King County Superior Court, September 28, 2001;

5. *VUCSA—Possession*, Jefferson County Superior Court, May 4, 2001;

6. *VUCSA—Possession*, Grant County Superior Court, February 6, 2001;

7. VUCSA—*Manufacture, Delivery and Possession with Intent*, Clallam County Superior Court, April 2, 1998; and

8. *VUCSA—Possession with Intent*, Clallam County Superior Court, April 2, 1998.

Defendant has indicated through counsel that he will stipulate that he has been convicted of a prior crime punishable by a term of imprisonment exceeding one year.  If

GOVERNMENT'S TRIAL BRIEF
*United States v. Parks*, CR13-165TSZ - 2

1    he does so stipulate, the government will not introduce other evidence of defendant's

2    felonies in its case-in-chief.  However, the government does expect to offer evidence of

3    defendant's three most recent convictions as impeachment evidence if defendant testifies.

4    The admissibility of this evidence is discussed in the government's Response to

5    Defendant's Motions *In Limine*.  Dkt. 92 pp. 3-5.

6    **2.    The March 30, 2013, Mt. Baker-Snoqualmie Incident**

7    On March 30, 2013, United States Forest Service Officers Jeff McIntosh and Ed

8    King were patrolling a Forest Service road in the Snoqualmie Ranger District of the Mt.

9    Baker-Snoqualmie National Forest when they encountered an All-Terrain Vehicle

10   ("ATV") rider named Robbie Gehre.  While speaking with Mr. Gehre, the officers heard

11   gunshots in the distance.  Mr. Gehre told the officers there were target shooters up the

12   road who had been unfriendly to him.  Mr. Gehre later gave a statement that one of the

13   shooters was wearing a green "boonie" style military hat, a longer green jacket, and

14   sunglasses.  Mr. Gehre stated that this man was holding a long gun with a scope.

15   Because the man was wearing sunglasses and a hat, Mr. Gehre was not able to identify

16   defendant in a photo montage.

17   Officers McIntosh and King drove up the road toward the area Mr. Gehre

18   described.  In a clearing, the officers came upon five men, a GMC Yukon SUV, and a

19   Ford Ranger pickup.  One of the men, later identified as JOHN PARKS, was wearing a

20   green battle dress uniform and a camouflage "boonie" hat.  He was the only one of the

21   five with a hat of that description.  Before contacting the group, officers saw one of the

22   men shoot a rifle at an exploding target.

23   The tailgates of both the Yukon and the Ranger were open, and firearms were

24   visible in both.  Officers ultimately found a total of eight firearms in the two trucks.  In

25   the Yukon, officers found two firearms: a Smith & Wesson 5.56mm M&P 15 assault rifle

26   and a Smith & Wesson 7.62mm M&P 10 assault rifle.  In the Ranger, officers found six

27   more firearms: a Norinco SKS assault rifle; a Sig Sauer 223 assault rifle; a Mauser 8mm

28

GOVERNMENT'S TRIAL BRIEF
*United States v. Parks*, CR13-165TSZ - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

rifle; a Hi-Point semiautomatic pistol; a Taurus Semiautomatic pistol, and a Taurus revolver.   For ease of reference, the following chart identifies the firearms:

| Exhibit | Firearm | Type | Location |
|---------|---------|------|----------|
| 1.1 | Smith & Wesson M&P 15 5.56mm | Assault Rifle | GMC Yukon |
| 1.2 | Smith & Wesson M&P 10 7.62mm | Assault Rifle | GMC Yukon |
| 2.1 | Norinco SKS 7.62mm | Assault Rifle | Ranger |
| 2.2 | Sig Sauer .223 caliber | Assault Rifle | Ranger |
| 2.3 | Mauser 98 8mm | Rifle | Ranger |
| 2.4 | Hi-Point C9 9mm | Semi-automatic pistol | Ranger |
| 2.5 | Taurus .45 ACP | Semi-automatic pistol | Ranger |
| 2.6 | Taurus .45/410 caliber | Revolver | Ranger |

Officers requested identification from the shooting party members.  While checking for outstanding warrants, officers determined that JOHN PARKS was a felon. During a search of JOHN PARKS, officers found a GMC key in JOHN PARKS's pocket consistent with the GMC Yukon containing the two Smith & Wesson assault rifles. They later determined that the GMC Yukon is registered to JOHN PARKS's girlfriend, Tamara Hoots.  While defendant was in handcuffs, he attempted furtively to discard a glass pipe that appeared to be a methamphetamine pipe.  He then denied that he had just done so.

The officers seized all of the firearms discussed above.  They also discovered and seized ammunition, tactical gear including a Blackhawk tactical vest, exploding targets, suspected methamphetamine, and methamphetamine paraphernalia.

Officers sent all of the firearms to the King County Regional Automated Fingerprint Identification System lab for testing.  The lab found no usable fingerprints on either of the assault rifles retrieved from the Yukon.  The lab found some usable prints on

GOVERNMENT'S TRIAL BRIEF
*United States v. Parks*, CR13-165TSZ - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the pistols and ammunition found in the Ranger.  Those prints did not match the known prints of JOHN PARKS.

### 3.      JOHN PARKS's Attempts to Retrieve His Weapons

In the days following his arrest, JOHH PARKS made several efforts to retrieve the firearms and other material seized in the search.  For example, the day after the arrest, JOHN PARKS left a voice message with the Forest Service complaining that his due process rights had been violated and that the officers had stolen the seized weapons.  At one point in the message, JOHN PARKS referred to the guns as "our guns," and then quickly corrected himself to say "their guns."

JOHN PARKS also made efforts to retrieve the tactical vest the officers seized along with the guns.  JOHN PARKS sent Forest Service officers a note stating that "I would like to know about the disposition of my Blackwater vest…."  On April 3, 2013, JOHN PARKS left another voicemail requesting the return of the vest.  The vest, which was found in the GMC Yukon, contains rifle magazine carriers for the same size ammunition accepted by one of the Smith & Wesson assault rifles (Exhibit 1.1) found in Tamara Hoots's GMC Yukon.

### 4.      The Search of JOHN PARKS's Home

On July 24, 2013,  ATF agents executed a search warrant at JOHN PARKS and Tamara Hoots's Belfair residence.  The agents found evidence linking JOHN PARKS to the guns that Forest Service officers had seized from JOHN PARKS on March 30, 2013.

For example, agents found a notebook containing the name, email address and other contact information of a Virginia resident named Brian Sorenson.  Further investigation showed that, in early March of 2013, Mr. Sorenson had sold JOHN PARKS the Smith & Wesson M&P 10 assault rifle (Exhibit 1.2) that Forest Service officers later found in Tamara Hoots's Yukon.  This sale was conducted over the internet.  As discussed below, agents later discovered emails between Mr. Sorenson and JOHN PARKS discussing the sale of the assault rifle.

GOVERNMENT'S TRIAL BRIEF
*United States v. Parks*, CR13-165TSZ - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Also in JOHN PARKS's house, agents found packaging for the scope attached to the Smith & Wesson M&P 10 assault rifle (Exhibit 1.2).  They found manuals for Sig Sauer 5.62 assault rifles—the same type of Sig Sauer rifle Forest Service Officers had found in the Ranger (Ex 2.2).  Other items retrieved in the search include:

- A 40 caliber magazine and .40 caliber ammunition;
- A .32 caliber revolver and .32 caliber ammunition;
- Exploding targets of the same type used by the shooting party in the forest; and
- A ballistic vest, body armor, magazine holders, and rifle plates.

As discussed below, the government expects to offer some, but not all, of this evidence at trial.

**5.    Evidence of JOHN PARKS's Firearms Purchases**

Investigation of the purchase and sale of the two assault rifles found in the Yukon (Exs. 1.1 and 1.2) revealed that JOHN PARKS purchased both rifles in private sales:

***Purchase of the Smith & Wesson M&P 15 5.56mm (Ex. 1.1):***  The evidence will show that JOHN PARKS purchased the Smith & Wesson M&P 15 found in the GMC Yukon.  Firearms Transactions Records establish that this rifle was originally purchased by a Belfair, Washington resident named Charles Junker from a Tacoma gun shop on December 21, 2012.  Charles Junker will testify that he then posted the gun for sale on Craig's List on January 16, 2013.  He almost immediately received a call in response to the advertisement and agreed to meet the purchaser near a Belfair Chevron station later that evening.  The Chevron station is less than 10 miles from JOHN PARKS's house.

Charles Junker will further testify that, at the appointed time, a dark SUV appeared at the meeting place.  Inside were a man matching JOHN PARKS's description and a woman matching Tamara Hoots's description.  Charles Junker then exchanged the Smith & Wesson M&P 15 assault rifle for cash.  Charles Junker's testimony is corroborated by records for a cell phone belonging to Tamara Hoots, which show two

GOVERNMENT'S TRIAL BRIEF
*United States v. Parks*, CR13-165TSZ - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

calls to Charles Junker's phone number on January 16, 2013 (the day of the sale), and one the following day.

Charles Junker's testimony will be further corroborated by testimony about a second gun sale to JOHN PARKS of a Bushmaster assault rifle.  The Bushmaster is not charged in the Indictment.  Charles Junker is expected to testify that he purchased this rifle on February 2, 2013.  Charles Junker advertised this rifle on a computer classified page.  Again, Charles Junker received a prompt response, with the buyer prepared to meet him at the Belfair Safeway that night.  However, because Charles Junker was occupied that night, he asked his father, Fred Junker, to handle the transaction.  Fred Junker is expected to describe a transaction very similar to the previous one described by Charles Junker.  Furthermore, Fred Junker, who previously selected JOHN PARKS in a photo montage, is expected to identity JOHN PARKS as the gun purchaser.

**Purchase of the Smith & Wesson M&P 10 (Ex. 1.2):**  As discussed above, the search of JOHN PARKS's house recovered a notebook containing contact information for a Virginia resident named Brian Sorenson.  The evidence will establish that Brian Sorenson sold the Smith & Wesson M&P 10 assault rifle found in the GM Yukon to JOHN PARKS.

Mr. Sorenson will testify that he sold the Smith & Wesson 7.62 assault rifle using an online bidding service called Gunbroker.com.  The winning bidder was a Washington resident who used the username Yaw83H.  Mr. Sorenson produced the email exchanges he had with the purchaser to arrange the sale.  The purchaser used an email account named steve.meyer41@yahoo.com (the "Steve Meyer Account"), but signed the emails "James Brown."  The last of the emails sent by the Steve Meyer Account to Mr. Sorenson states:

> Received rifle today.  Will go to the range with it tomorrow…. Again thank you and Yaweh bless you . . . may Yaweh protect you.

The evidence will show that JOHN PARKS was the sender of the Steve Meyer Account emails.  The government will offer an email JOHN PARKS sent Tamara Hoots

GOVERNMENT'S TRIAL BRIEF
*United States v. Parks*, CR13-165TSZ - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  from the Federal Detention Center ("FDC") in which he refers to the Steve Meyer

2  Account as "my" account *and* provides the account password.  In addition, when Mr.

3  Sorenson asked "Steve Meyer" for a phone number, the sender responded with the same

4  T-Mobile number registered to Tamara Hoots that was used to arrange the purchase from

5  Charles Junker.  Records for that phone reflect a 19-minute call with Mr. Sorenson on

6  March 3, 2013—the day after the Gunbroker.com auction on the Smith & Wesson M&P

7  10 assault rifle closed.

8         Finally, as discussed in the government's Response to Defendant's Motion *in*

9  *Limine,* the government plans to offer emails JOHN PARKS sent from the FDC

10 containing nearly identical language to the language used on the Steve Meyer Account.

11 In his FDC emails, JOHN PARKS repeatedly uses the blessings "Yaweh Bless You" and

12 "Yaweh Protect you," just as he did in the Steve Meyer Account emails.  And, JOHN

13 PARKS repeatedly references the number 83, which is believed to be a reference to

14 Psalms 83.  These references tie JOHN PARKS to the "Yah83H" Gunbroker user

15 account.

16 **B.    Expert Witnesses**

17        The following is a summary of potential expert witnesses.  All of these witnesses

18 were disclosed to the defense on October 4, 2013.

19        ***Steve Everist:***  Mr. Everist a fingerprint examiner with the King County Regional

20 Automated Fingerprint Identification System ("AFIS") office.  Mr. Everist will testify

21 about fingerprints and fingerprint analysis generally, the results of the fingerprint

22 analyses in this case (which did not identify any prints of JOHN PARKS), and issues

23 surrounding finding and comparing fingerprints on firearms and ammunition.  Mr.

24 Everist may also testify that the fingerprints on the judgments for JOHN PARKS's prior

25 convictions match the fingerprints taken at JOHN PARKS's booking in this case.

26        ***Special Agent Joseph Bisbee***:  Special Agent Bisbee is a supervisory Special

27 Agent with the Bureau of Alcohol Tobacco and Firearms ("ATF").  Special Agent Bisbee

28 will testify about common practices for the sale of firearms and ammunition, including

GOVERNMENT'S TRIAL BRIEF
*United States v. Parks*, CR13-165TSZ - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  the process for, and documentation of, interstate gun and ammunition sales.  If defendant
2  does not stipulate to this fact, Special Agent Bisbee may also testify that each of the
3  charged firearms travelled in interstate commerce and meets the statutory definition of
4  "firearms."  Mr. Bisbee may also provide fact testimony about, *inter alia,* items
5  recovered in the search of JOHN PARKS's house.

6       *Special Agent Heidi Wallace:*  Ms. Wallace is a Special Agent with ATF.  If
7  necessary, Special Agent Wallace may testify that each of the charged firearms travelled
8  in interstate commerce and meets the statutory definition of "firearms."

9  **C.    Stipulations**

10       The government has submitted several proposed stipulations to the defendant.
11  Defense counsel has indicated defendant will stipulate that (a) he has been convicted of a
12  felony, and (b) all charged firearms travelled in interstate commerce.  The government
13  also expects to propose a stipulation regarding the admissibility of certain records of
14  regularly-conducted activity.

15  **III.    PROCEDURAL STATUS**

16       On May 29, 2013, the grand jury issued a five-count indictment charging JOHN
17  PARKS and co-defendants GREG CARROLL and JOSHUA CARROLL with firearms
18  offenses.  Count 2 charges JOHN PARKS with *Felon in Possession of a Firearm* with an
19  *Armed Career Criminal* allegation in violation of 18 U.S.C. § 922(g)(1).  Greg Carroll
20  and Joshua Carroll entered guilty pleas on October 7 and October 9, respectively.
21  Accordingly, the only count remaining for trial is Count 2:  Felon in Possession of a
22  Firearm—Armed Career Criminal

23  **IV.    LAW RELATING TO THE CHARGE**

24       To convict JOHN PARKS of the charge of *Felon in Possession of a Firearm*, the
25  government must prove beyond a reasonable doubt that: (1) defendant knowingly
26  possessed a firearm; (2) the firearm had been shipped or transported from one state to
27  another, or from a foreign nation to the United States; and (3) at the time defendant
28

GOVERNMENT'S TRIAL BRIEF
*United States v. Parks*, CR13-165TSZ - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

possessed the firearm, he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year.  Ninth Circuit Model Jury Instruction 8.59.

The government need not establish that the defendant owned the firearm; only that he possessed it.  *United States v. Casterline*, 103 F.3d 76, 78 (9th Cir. 1996).  "A person has possession of something if the person knows of its presence and has the power and intention to control it."  Ninth Circuit Model Jury Instruction 3.17.  "The element of possession may be satisfied by proof of constructive or joint possession.  To establish constructive possession, the government must produce evidence showing ownership, dominion, or control over the contraband itself or the premises or vehicle in which contraband is concealed."  *United States v. Shirley*, 884 F.2d 1130, 1134 (9th Cir. 1989) (internal citations and quotations omitted).

Defendant is expected to stipulate that all of the firearms travelled in interstate commerce.  In any case, the government's burden concerning in this regard is very slight. The government is required to prove only that the firearm traveled in interstate or foreign commerce at some point in time.  *Scarborough v. United States*, 431 U.S. 563, 575 n.11 (1977).  The shipment or transportation in interstate commerce need not be recent. *United States v. Casterline*, 103 F.3d 76, 77 (9th Cir. 1996).  Testimony that a firearm is not manufactured in the state where the defendant possessed it is sufficient to meet the government's burden.  *United States v. Alvarez*, 972 F.2d 1000, 1002 04 (9th Cir. 1992) (evidence of gun's foreign manufacture is sufficient to prove the gun moved in interstate commerce).

If convicted of these charges, JOHN PARKS will be subject to the penalties applicable to an armed career criminal set out in 18 U.S.C. ' 924(e).  However, the applicability of Section 924(e) is determined by the Court at the time of sentencing and does not present issues for the factfinder at trial.  *United States v. Booker*, 543 U.S. 220, 244 (2005) ("Any fact [other than a prior conviction] which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty

GOVERNMENT'S TRIAL BRIEF
*United States v. Parks*, CR13-165TSZ - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  or a jury verdict must be admitted by the defendant or proved to a jury beyond a

2  reasonable doubt.") (emphasis added)).

## V.   EVIDENTIARY AND LEGAL ISSUES

### A.   Defendant's Statements

#### 1.   Out of Court Statements by Defendant Are Not Hearsay

The government will elicit testimony of oral and written statements made by the defendant.  A statement is not hearsay if the statement is offered against a party and is the party's own statement.  Fed. R. Evid. 801(d)(2)(A); *United States v. Burreson*, 643 F.2d 1344, 1349 (9th Cir. 1981).  Therefore, defendant's statements are admissible when offered by the United States.

However, the converse is not true: defendants' statements are not exempt from the hearsay rule when offered by the defendant.  Because such statements constitute self-serving hearsay, Federal Rule of Evidence 801(d)(2) applies only where a statement is offered *against* the party that made the statement, not when it is offered on the declarant's behalf.  *See United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000); *United States v. Fernandez,* 839 F.2d 639**,** 640 (9th Cir. 1988).  Therefore, the hearsay rule precludes a party from placing his exculpatory statements—or any others—before the jury without subjecting himself to cross-examination.  *Ortega*, 203 F.3d at 682. Furthermore, the rule of completeness, under Fed. R. Evid. 106, applies only to written or recorded statements.  *United States v. Collicott*, 92 F.3d 973, 983 (9th Cir. 1996) (hearsay not admitted regardless of Rule 106).

#### 2.   Defendant's Emails With Brian Sorenson Are Admissible.

As discussed above, the government will offer emails between defendant and Brian Sorenson, the Virginia resident who sold JOHN PARKS one of the assault rifles.  Mr. Sorenson, who produced the emails to the government, will authenticate the emails.

JOHN PARKS's statements in emails are not hearsay because they are party admissions.  Defendant may dispute that he is the author of the "Steve Meyer" emails. However, the emails are nonetheless admissible pursuant to Federal Rule of Evidence

GOVERNMENT'S TRIAL BRIEF
*United States v. Parks*, CR13-165TSZ - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    104(a) if the Court finds, by a preponderance of the evidence, that JOHN PARKS likely

2    authored the emails. Fed. R. Evid. 104(a) ("the court must decide any preliminary

3    question about… whether evidence is admissible"); *Bourjaily v. United States*, 483 U.S.

4    171, 175 (1987) (preponderance of the evidence standard applies to Rule 104(a)

5    determinations); *United States v. Flores*, 679 F.2d 173, 178 (9th Cir. 1982) (issue of

6    whether statement was a party admission properly resolved by court under Rule 104(a)).

7         Here, the government will offer evidence establishing that the defendant authored

8    the "Steve Meyer" emails.  The evidence will include an email indisputably written by

9    defendant on his FDC email account in which he refers to the Steve Meyer Account as

10   "my" email account and provides the password for that account.  Dkt. 92 Ex B (FDC

11   email regarding Steve Meyer account).  Furthermore, defendant provided Tamara Hoots's

12   phone number to Brian Sorenson as contact information in the "Steve Meyer" emails.

13   And, that same phone number was used to call Brian Sorenson just hours after one of the

14   "Steve Meyer" emails was sent.  Finally, Brian Sorenson's contact information (including

15   email) and the GunBuyer.com auction number for Exhibit 1.2 were found written in a

16   notebook in JOHN PARKS's house.  All of this evidence establishes by a preponderance

17   of the evidence that defendant sent the "Steve Meyer" emails, and that they therefore may

18   be introduced as party admissions.

19        **3.**     **Voicemails and Testimony of Voice Identification**

20        The government will offer voicemails left by defendant for the Forest Service in

21   which defendant requested the return of the guns and other property seized by the Forest

22   Service.  Officer McIntosh with authenticate the messages.  JOHN PARKS identified

23   himself as the speaker on the voicemails.  Furthermore, Officer McIntosh, who is

24   personally familiar with defendant's voice, will confirm that defendant's voice is the

25   voice on the recordings.  This is permissible under Federal Rule of Evidence 901(b)(5),

26   which permits authentication by a person who has heard the voice "at any time under

27   circumstances connecting it with the alleged speaker." *See also United States v. Thomas*,

28

---

586 F.2d 123, 133 (9th Cir. 1978) (affirming agent's lay opinion testimony on voice

identification where agent had spoken to the defendant three times over the telephone).

**B.     Photographs and Diagrams**

The government expects to offer photographs, maps, and diagrams of various

locations associated with the case, such as the area where defendant was found in

possession of the guns, and relevant locations near defendant's house.  These exhibits are

admissible if a witness testifies that they are accurate representations of what they are

intended to depict.  *United States v. Brannon*, 616 F.2d 413, 416 (9th Cir. 1980)

(evidence that photographs accurately depict scene provides a sufficient foundation for

admission under FRE 901(a)).

**C.     Federal Rule of Evidence 404(b) Evidence**

Federal Rule of Evidence 404(b) provides that evidence of a crime, wrong or other

act is not admissible to prove a person's character for the purposes of showing that the

person acted in conformity therewith on a particular occasion. Fed. R. Evid. 404(b)(1).

Such evidence may be admissible, however, for other purposes, such as proving motive,

*modus operandi*, opportunity, intent, plan, knowledge, identity, or absence of mistake.

Fed. R. Evid. 404(b)(2).  To introduce evidence under Rule 404(b), the government must

provide notice to the defense of any such evidence prior to trial, or during trial if the court

excuses pretrial notice.  Fed. R. Evid. 404(b)(2).

Evidence should not be treated as 'other crimes' evidence, and instead should be

admitted as direct evidence of the charged offense, when the evidence concerning the

"other" act and the evidence concerning the crime charged are "inextricably intertwined."

*United States v. Warren*, 25 F.3d 890, 895 (9th Cir. 1994) (evidence of uncharged murder

committed immediately after charged murder was inextricably intertwined with charged

conduct and was therefore not Rule 404(b) evidence).  Evidence is "inextricably

intertwined" if it either (a) constitutes part of the transaction that serves as a basis for the

criminal charge, or (b) is necessary to "permit the prosecutor to offer a coherent and

comprehensible story regarding the commission of the crime."  *United States v. Rrapi*,

GOVERNMENT'S TRIAL BRIEF
*United States v. Parks*, CR13-165TSZ - 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

175 F.3d 742, 749 (9th Cir. 1999).  The government intends to offer three categories of evidence that are arguably "other acts" evidence under Rule 404(b).  The government provided notice of intent to offer all of this evidence on October 14, 2013.

### 1.    JOHN PARKS's Purchase of Bushmaster Rifle from Fred Junker

As discussed above, the government will offer evidence that defendant purchased one of the charged assault rifles (Exhibit 1.2) from Charles Junker.  Defendant has moved to suppress any identification of JOHN PARKS by Charles Junker based on his contention that agents improperly influenced Charles Junker by showing him a picture of JOHN PARKS during an interview.  While the government believes the Motion to Suppress lacks merit, the defense presumably will, at a minimum, argue to the jury that the identification is unreliable.  Therefore, the identity of the person who purchased Exhibit 1.2 from Charles Junker will be an important issue at trial.

The fact that it was JOHN PARKS who purchased Exhibit 1.2 from Charles Junker will be buttressed testimony of Charles Junker's father, Fred Junker.  Fred Junker identified JOHN PARKS in a photo montage as the person to whom he sold a Bushmaster assault rifle two months after Charles Junker's sale of the charged assault rifle.  The circumstances of the sale Fred Junker will describe are almost identical to those of the Charles Junker sale.  The transactions took place within approximately one mile of one another.  In both cases, a man and a woman appeared together to purchase the gun.  In both cases, the man inspected the gun and then went to retrieve money from the woman, who waited in the car.  In both cases the buyer paid cash for the weapon.

Fred Junker's testimony is admissible to prove identity under Rule 404(b).  A genuine dispute exists over the critical issue of whether JOHN PARKS was the person who purchased the assault rifle from Charles Junker.  The fact that Fred Junker can identify defendant as purchasing another assault rifle under nearly identical circumstances is highly probative of that disputed issue.  *United States v. Cherer,* 513 F.3d 1150, 1158 (9th Cir. 2008) (incidents of defendant using specific sexual language in internet communications admissible to prove defendant's identity where defendant had

GOVERNMENT'S TRIAL BRIEF
*United States v. Parks*, CR13-165TSZ - 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    allegedly used similar sexual language in connection with charged offense); *United States*

2    *v. Price*, 516 F.3d 597, 604 (7th Cir. 2008) (evidence of uncharged bank robbery by

3    defendant subsequent to charged robbery was admissible under Rule 404(b) where

4    robberies took place five months apart and circumstances of the subsequent robbery were

5    similar to charged robbery).

6         For these reasons, Fred Junker's testimony is admissible under Rule 404(b).

7    Because the evidence is admissible only for a limited purpose, the government proposes

8    that, before Fred Junker's testimony, the Court provide a modified version of Ninth

9    Circuit Model Instruction 2.11, which instructs the jury to consider the evidence only for

10   its bearing on identity.  *See* Ex A (proposed instruction).

11        **2.      Gun-Related Items Seized in Search**

12        When agents searched JOHN PARKS's residence, they found various gun-related

13   items, including a .32 caliber pistol and ammunition and a loaded .40 caliber magazine.

14   Agents also found evidence directly linked to the items found at the shooting party scene,

15   including the notebook with Brian Sorenson's contact information, packaging for the

16   optical scope attached to the Smith & Wesson M&P 10 found in the Yukon (Exhibit 1.2),

17   manuals for the Sig Sauer assault rifle (Exhibit 2.2), exploding ammunition of the

18   identical brand found at the crime scene, and a magazine holder compatible with JOHN

19   PARKS's assault rifles.

20        The government does not expect to offer evidence of the guns and ammunition

21   found in the house, which are of a different type than the guns found in the forest.

22   However, the government does intend to offer evidence of the notebook scope packaging,

23   the Sig Sauer manuals, the exploding targets, and magazine holder.  This evidence

24   directly ties JOHN PARKS to the weapons charged in the Indictment and therefore

25   "constitutes part of the charged transaction." *Rrapi*, 175 F.3d at 749.  As such, this

26   evidence is "inextricably intertwined" with the charged offense conduct and admissible

27   not as an "other act" under Rule 404(b), but as evidence of the charged offense.

28

GOVERNMENT'S TRIAL BRIEF
*United States v. Parks*, CR13-165TSZ - 15

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1          **3.      JOHN PARKS's False Statement and Attempt to Conceal Pipe**

2          As discussed more fully in the parties' briefing on Defendant's Motion *in Limine*,

3   law enforcement witnesses would testify that, at the time of the arrest, defendant made a

4   furtive motion in an attempt to discard a methamphetamine pipe.  JOHN PARKS then

5   falsely told the officers that the pipe was not his.  During the same conversation, JOHN

6   PARKS also told the officers that he had not possessed the firearms in the GMC Yukon

7   or the Ranger.

8          The methamphetamine pipe incident is admissible as an act "inextricably

9   intertwined" with the charged offense.  *Warren*, 25 F.3d at 895.  The incident was part of

10  the law enforcement contact that resulted in the instant charge.  Therefore, it is both part

11  of the transaction that forms the basis of the present charge, and it is necessary for the

12  prosecution to tell a complete story of the incident.  *Rrapi*, 175 F.3d at 749.  In the

13  alternative, the fact that JOHN PARKS made a false statement to law enforcement at the

14  time of the arrest is admissible as impeachment evidence under Rule 608(b) if defendant

15  testifies.  *See* Fed. R. Evid. 608(b) (incidents of specific conduct admissible to show

16  witness's dishonest character).

17  **D.     Records of Regularly-Conducted Activity and Certified Public Records**

18         **1.      Records of Regularly-Conducted Activity**

19         The government will offer records of regularly-conducted activity for admission

20  under Rule 803(6).  A record is admissible under this rule if:  (a) the record was made at

21  or near the time of the event by a person with knowledge; (b) the record was kept in the

22  course of a regularly-conducted activity; (c) making the record was a regular practice of

23  the activity; (d) the foregoing conditions are established by a qualified custodian of

24  records; and (e) there are no indications of a lack of untrustworthiness.

25         Admissibility of Rule 803(6) records is determined by the Court under Rule

26  104(a).  Admissibility may be established either by live testimony or by a written

27  certification under Rule 902(11).  Any person familiar with the organization's record-

28  keeping practices is competent to establish these conditions, even if the person lacks

GOVERNMENT'S TRIAL BRIEF
*United States v. Parks*, CR13-165TSZ - 16

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

personal knowledge of the particular record. *United States v. Pitman*, 475 F.2d 1335, 1337 (9th Cir. 1973).

The government intends to offer the records below based on written Certification of Records Custodians pursuant to Rule 902(11).  The certifications are attached to this Trial Brief as follows:

| Trial Exhibit | Description | Certification Attached |
|---|---|---|
| 17.1 | Firearm Transaction Record:  Bullseye Shooters | Ex. B, p.1 |
| 17.2 | Firearm Transaction Record:  Cabela's Lacey | Ex. B, p.2 |
| 17.3 | Firearm Transaction Record:  Cabela's Tulalip | Ex. B, p.3 |
| 17.4 | Firearm Transaction Record:  Pinto Guns | Ex. B, p.4 |
| 24.1 | T-Mobile Subscriber Information | Ex. B, p.5 |
| 24.2 | T-Mobile Phone Records | Ex. B, p.6 |

The government requests that the Court admit these records pursuant to Rule 104(a).

### 2.     Public Records

The government also intends to offer certified copies of government records pursuant to Federal Rules of Evidence 803(6), 803(8), 902(2), and 902(11) without presenting the live testimony of document custodians.  Public records of regularly-conducted activity are admissible under both Federal Rule of Evidence 803(6) (discussed above) and under Rule 803(8), which provides as follows:

> Records, reports, or data compilation, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report . . .

*Id.*  Certified copies of public records are self-authenticating.  Fed. R. Evid. 902(2).  The government intends to offer the registrations for the GMC Yukon and Ford Ranger pursuant to this Rule.  In addition, the government may also offer certified copies of defendant's most recent convictions for impeachment purposes.

GOVERNMENT'S TRIAL BRIEF
*United States v. Parks*, CR13-165TSZ - 17

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| | |
|---|---|
| 1 | **VI.    CONCLUSION** |
| 2 | The United States submits this trial brief to inform the Court as to the significant |
| 3 | legal issues that may arise during trial.  It reserves the right to offer alternative arguments |
| 4 | if these issues are subject to pretrial motions, and to raise additional legal issues during |
| 5 | the course of the trial. |
| 6 | DATED:  October 18, 2013. |
| 7 | Respectfully submitted, |
| 8 | JENNY A. DURKAN |
| 9 | United States Attorney |
| 10 | |
| 11 | *s/ Stephen Hobbs* |
| | STEPHEN HOBBS |
| 12 | Special Assistant United States Attorney |
| 13 | *s/ Seth Wilkinson* |
| 14 | SETH WILKINSON |
| 15 | Special Assistant United States Attorney |
| 16 | United States Attorney's Office |
| 17 | 700 Stewart Street, Suite 5220 |
| | Seattle, Washington 98101-1271 |
| 18 | Telephone: (206) 553-7970 |
| 19 | Email: Stephen.Hobbs@usdoj.gov |
| | Email: Seth.Wilkinson@usdoj.gov |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

GOVERNMENT'S TRIAL BRIEF
*United States v. Parks*, CR13-165TSZ - 18

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that on October 18, 2013, I electronically filed the foregoing with

3    the Clerk of the Court using the CM/ECF system which will send notification of such

4    filing to the attorney(s) of record for the defendant(s).

5

6                              *s/Rebekah Smith*
                              REBEKAH SMITH
7                              Legal Assistant
                              United States Attorney's Office
8                              700 Stewart Street, Suite 5220
9                              Seattle, Washington 98101-1271
                              Phone: 206-553-7970
10                             E-mail: rebekah.smith@usdoj.gov

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GOVERNMENT'S TRIAL BRIEF
*United States v. Parks*, CR13-165TSZ - 19

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970